(No. 3255—

EDWARD DOMKE, M. D., BY AND THROUGH EUNICE DOMKE, AS ADMINISTRATOR OF THE ESTATE OF EDWARD DOMKE, DECEASED; EUNICE DOMKE, INDIVIDUALLY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1943.*

J. EDWARD RADLEY, for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

FISHER, J.

This claim was filed May 5, 1938. Claimant's amended complaint was filed May 7, 1940, substituting parties claimant. The claim, as filed, is for benefits under the Illinois Workmen's Compensation Act, and amended for the illness and death of Edward Domke as a result of contracting tuberculosis while he was engaged as a physician at the Peoria State Hospital.

The complaint alleges that Edward Domke, a physician, was employed by the State of Illinois as a physician at the Elgin State Hospital and the Peoria State Hospital. That while employed at the Peoria State Hospital he contracted tuberculosis. Claimant's amended complaint sets out the death of Dr. Edward Domke and makes the administrator of his estate a party claimant. Claimant now seeks an award under the Workmen's Occupational Diseases Act.

The record consists of the complaint, transcript of testimony, motion to reopen cause for additional testimony, supplemental transcript of testimony, claimant's original statement, brief and argument, supplemental statement, brief and argument, reply brief and argument of claimant, and respondent's statement, brief and argument.

The facts in connection with this claim are not in controversy. Dr. Domke contracted tuberculosis while engaged

as a physician at the Peoria State Hospital and died as a direct result thereof. The claim for compensation was originally filed under the Illinois Workmen's Compensation Act, but there being no provisions for compensation for a case of this kind under this Act, we are asked to consider the claim. under the Workmen's Occupational Diseases Act. Exhaustive and able briefs and arguments are filed by respective counsel.

The facts of this claim are very similar to those in the claim in the case of *Marjorie Wheeler* vs. *State*, No. 3363, in which case we discussed at length the Illinois Workmen's Occupational Diseases Act and its application to employees of the State. Our conclusions in that case are applicable here and are controlling herein. We concluded that the State was within the provisions of Section 3 of the Workmen's Occupational Diseases Act, which is in part, as follows:

"Where an employee in this State sustains an injury to health or death by reason of a disease contracted or sustained in the course of the employment and proximately caused by the negligence of the employer, unless such employer shall have elected to provide and pay compensation as provided in Section 4 of this Act, a right of action shall accrue to the employee whose health has been so injured for any damages sustained thereby; * * * provided that violation by any employer of any effective rule or rules made by the Industrial Commission pursuant to the Health and Safety Act enacted by the Fifty-ninth General Assembly at the third special session, or violation by the employer of any statute of this State, intended for the protection of the health of employees, shall be and constitute negligence of the employer within the meaning of this section: * * *."

A claimant, to be entitled to compensation under this Section, must show that the employer violated—

(1) A rule or rules of the Industrial Commission made pursuant to the Health and Safety Act, or

(2) Violated a statute of this State intended for the protection of the health of employees.

*Grutzius* vs. *Armour & Co.*, 312 Ill. App. 366.

We know of no rule or rules of the Industrial Commission promulgated pursuant to the Health and Safety Act of this State, and consequently there could be no violation of such rule.

Claimant contends that respondent violated Section 2 of "An Act to Promote the Public Health and Comfort of Persons Employed by Providing for One Day Rest in Seven" (Illinois Revised Statutes). We fail to find any evidence in the record to support this contention. We have searched the record and it appears that the only evidence or testimony

bearing on this point is the following, which appears on page 3 of the transcript of testimony of Dr. Domke, as follows:

Q. "During this period of time what were the conditions—were you provided with gowns or sterilization of your person?

A. On the chronic wards they didn't have any gowns for the doctors to wear and all we were able to do with our hands was wash them with soap and water."

And, on page 5:

Q. "You may state the procedure in regard to the Officer of the Day.

A. Officer of the Day is part of our duties, it rotates among the members of the staff. The number of times during the month varies with the number of doctors that are on the staff. As a rule about every eight or nine days it is our turn to be Officer of the Day.

Q. And during those times were you called to the various tuberculosis hospitals and other wards?

A. After five o'clock the Officer of the Day was the only doctor on duty and he had to take care of all emergency calls."

In order that an award may be had, it is not sufficient for a claimant to show that he contracted an occupational disease or became ill as a result of his occupation. He must show in addition that the disease or illness was contracted as a result of the negligence of the employer, and the statute specifically provides what shall be construed as negligence.

We find nothing in the record that could be construed as a violation by respondent of any statute of this State intended for the protection of the health of employees, and therefore we can find no authority upon which to base an award.

Award denied.